IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLARK & SULLIVAN BUILDERS, INC.,

    Plaintiff,                                              No. CIV 2:12-cv-0972-KJM-JFM

    vs.

INCLINE GLASS,

    Defendant.                                          FINDINGS & RECOMMENDATIONS

_____/

Pending before the court is plaintiff Clark & Sullivan Builders, Inc.'s ("C&S") amended application for default judgment. Defendant Incline Glass ("Incline") has not filed an opposition. On review of the application and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

ALLEGATIONS IN THE COMPLAINT

C&S is a California-licensed general contractor. In March 2010, the Judicial Council of California, Administrative Office of the Courts ("AOC"), publicly advertised for bid proposals from qualified general contractors to construct the new Susanville Courthouse located at 2610 Riverside Drive, Susanville, California ("the Project").

In 2010, C&S solicited bids for the Project from subcontractors for the various scopes of work to be performed on the Project as part of its effort to bid the Project. Nevada-

1

1  based Incline was one of the responsive bidders for the scope of the work including the provision
2  of labor and materials related to the installation of aluminum frames, sidelites and entrances,
3  glass entrances and storefronts, balanced door entrances, glazed aluminum curtain walls, interior
4  structural glass walls, aluminum windows, bullet resistant aluminum windows, security
5  windows, metal framed skylights, glass glazing and door hardware.
6       As the lowest bidder for the Project, C&S was chosen as the general contractor on
7  October 7, 2010 and entered into a written contract for construction of the Project ("the Prime
8  Contract").
9       On July 22, 2010, C&S and Incline entered into an agreement for performance of
10 the work on the Project. The agreement included the Subcontract Agreement and the Scope of
11 Work, and incorporated the Prime Contract, including General Conditions and Special
12 Conditions ("the Subcontract Agreement"). The contract price for the Subcontract Agreement
13 was &723,328.00. Incline was to provide all labor and materials within the listed scope of work.
14       Prior to entering into the Subcontract Agreement, C&S provided a bid package to
15 Incline which contained, among other things, a construction schedule, project drawings and
16 specifications and conditions of the contract (including, but not limited, to General, Special and
17 other Conditions), all of which were deemed part of the Subcontract Agreement.
18       During the course of construction of the Project, C&S issued written change
19 orders to Incline, which adjusted the contract balance to a total of $712,784.
20       Incline allegedly breached the Subcontract Agreement by failing to timely pay its
21 second tier subcontractors and suppliers, and failing to complete all of the work. Plaintiff alleges
22 Incline abandoned the project.
23       C&S notified Incline of its failure to perform and abandonment, and demanded
24 completion of the work. Incline failed and refused to perform. As a result, C&S itself is forced
25 to pay to complete Incline's work and to pay suppliers and second-tier subcontractors.
26 /////

Under the express terms of the Subcontract Agreement, Incline is required to indemnify and hold harmless C&S from any and all forms of liabilities, costs, damages, and expenses arising out of Incline's performance or failure to perform under the Subcontract Agreement, including losses or claims related to mechanics liens.

RELEVANT PROCEDURAL BACKGROUND

Plaintiff initiated this diversity action on April 12, 2012 raising claims for breach of contract, common counts and contractual indemnity. Plaintiff seeks actual, compensatory, consequential and incidental damages not less than $250,000.00. Plaintiff also seeks attorney's fees.

Defendant was served with personal service with a copy of the summons and complaint on April 26, 2012. See Doc. No. 7. The copies were served on Jones Vargas and Danielle Durkee, authorized agents for the corporate defendant. Id.

On May 24, 2012, plaintiff moved for entry of default. Doc. No. 6. On May 25, 2012, the Clerk of the Court entered default as to Incline. Doc. No. 12.

On May 30, 2012, plaintiff filed the instant application for default judgment. Doc. No. 13. Plaintiff seeks judgment in the amount of $249,902.36. This request includes attorney's fees and costs. Plaintiff avers that the only means by which to serve defendant was through personal service and mail service at the home address of defendant's president, Pat Geary. Markham Decl., ¶ 9. Plaintiff asserts that, per the Nevada Secretary of State website, Incline does not have a registered agent for service and the status of the company is in default. Id.

Incline has not filed an opposition to plaintiff's motion and has not otherwise appeared in this action.

DISCUSSION

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise

3

defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted).); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v.

4

Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

1. Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

2-3. Merits of Plaintiffs' Substantive Claims & "Sufficiency of the Complaint"

The undersigned considers the merits of plaintiffs' substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978); PepsiCo, Inc., 238 F. Supp. 2d at 1175.

a. Breach of Contract

A claim of breach of contract is comprised of (1) the existence of a contract, (2) performance or excuse for nonperformance by the plaintiff, (3) breach by the defendants, and (4) resulting damages to the plaintiff. Alcalde v. NAC Real Estate Invs. & Assignments, Inc., 316 F. App'x 661, 662 (9th Cir. 2009), citing First Comm. Mort. Co. v. Reece, 89 Cal. App. 4th 731 (Cal. Ct. App. 2001); Haberbush v. Clark Oil Trading Co., 33 F. App'x 896, 898 (9th Cir. 2002). Here, plaintiff entered into an agreement with defendant. Defendant breached the contract by failing to perform. The resulting damage for defendant's non-performance is $236,209.36. Thus, taking the factual allegations in plaintiff's complaint as true, plaintiff has adequately stated a claim for breach of contract.

b.  Common Count

The only essential allegations of a common count are 1) the statement of indebtedness in a certain sum, 2) the consideration, i.e., goods sold, work done, etc., and 3) nonpayment. Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 460 (Cal. Ct. App. 1997). The court concludes that the complaint was legally sufficient for this claim.

c.  Contractual Indemnity

"Where ... parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity." Rossmoor Sanitation, Inc. v. Pylon, Inc., 13 Cal.3d 622, 628 (Cal. 1975). Here, the Subcontract Agreement provided an indemnification agreement that obliges Incline to fully indemnify and hold harmless C&S. See Compl, Ex. 1 (Subcontract Agreement, p.3 ¶ 10).

Thus, this Eitel factor favors entry of default judgment.

4.  Sum of Money at Stake

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff seeks judgment in the amount of $249,902.36. Under the circumstances of this case, the undersigned concludes that this factor favors the entry of default judgment.

4.  Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any

6

genuine issue of material fact exists.[1]  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.

     5.    Factor Six: Whether the Default Was Due to Excusable Neglect

On review of the record before the court, the undersigned finds that the default was not the result of excusable neglect.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Plaintiff served the defendant with the summons and complaint.  Moreover, plaintiff served defendant by mail and personal service with notice of its application for default judgment.  Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant has not appeared in this action to date.  Thus, the record suggests that defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

     6.    Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  Although this factor, standing alone, is not dispositive, see PepsiCo, Inc., 238 F. Supp. 2d at 1177, it advises against granting plaintiffs' motion in combination with the other factors previously discussed.

In sum, the court finds that consideration of the Eitel factors favors granting the motion for default judgment.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment be granted; and

---

[1] Defendant's failure to file an answer in this case or a response to the instant default application further supports the conclusion that the possibility of a dispute as to material facts is minimal.

7

       2. Judgment be entered against Incline in the amount of $249,602.36, which includes attorney's fees.[2]

       These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 10, 2012.

                                              UNITED STATES MAGISTRATE JUDGE

/014;clar0972.mdj

---

[2] Plaintiff's request for attorney's fees contemplates time spent appearing at a hearing on the instant motion. Because the hearing on this motion was vacated, see Doc. No. 30, the court recommends deducting one billable hour from plaintiff's request for attorney's fees, for a total $300 deduction. See Markham Decl., ¶¶ 7-8.